IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ROTHERHAM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

COREY T. ROTHERHAM, JR., APPELLANT.

Filed May 5, 2026.    No. A-25-935.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Michael Meister, Scotts Bluff County Public Defender, and Lauren J. Newell for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

Corey T. Rotherham, Jr. (Corey), appeals from the order of the Scotts Bluff County District Court that denied his motion to transfer his case from the district court to juvenile court. Finding no abuse of discretion, we affirm.

## II. STATEMENT OF FACTS

Corey had just turned 16 years old at the time of the events occurring on January 20, 2025, giving rise to the current charges. Corey was involved with four other individuals (ranging in age from 16 to 20) in the pursuit and assault of the victim, Wyatt Reeb, who died because of his injuries. Corey was charged with aiding and abetting second degree murder, a Class IB felony; and aiding and abetting use of a deadly weapon to commit a felony, a Class II felony.

- 1 -

Corey filed a motion to transfer his case to juvenile court, along with a request to have an expert witness appointed to evaluate him. The district court granted Corey's request for an evaluation. The evaluation was completed by Dr. Antoni Schutz, a clinical psychologist, in late August 2025. The hearing on Corey's motion to transfer to juvenile court was held on October 21. Schutz testified, along with Rob Kiesel, an investigator with the Scottsbluff Police Department; Tamera Frye, the director of the Scotts Bluff County Diversion Office; Cameron Cardwell, a juvenile probation officer; Melissa Buhr, an adult probation officer; and Kyle King, the program director at Reconnect High School. Corey also testified. In addition, the court received several exhibits, including the police and autopsy reports in this case, records of other assaults in which Corey was involved, school documents, documents from a previous juvenile court case, and the psychological evaluation.

Dr. Schutz testified that she performed an evaluation of Corey to determine if she felt he would be a good candidate for a juvenile transfer. This was the first such evaluation she had performed in her practice. Schutz testified that she did not find any evidence of aggression in Corey, although she admitted that she was not provided with the police investigation reports in the case. She thought Corey was remorseful for what happened but also feared what was going to happen next. Schutz did not assess Corey's risk level for future violent behavior. Schutz identified treatment that would be beneficial for Corey, including participating in a skills group using dialectical behavior therapy to learn how to deal with difficult situations. She did not believe this type of therapy was available in the adult prison setting although it would be available in adult probation. Schutz thought that Corey would be eligible to complete rehabilitation therapy by the time he is 19 years old. She based this belief upon the fact that he did not have any significant mental health disorders or educational disorders that would impede his progress in treatment.

Schutz' evaluation report shows her diagnosis of Corey as "Other Specified Attention-Deficit/Hyperactivity Disorder," which indicates that Corey experiences some symptoms that have interfered with his life; however, he does not meet the full criteria for the disorder. Schutz' professional opinion was that Corey's case should be in juvenile court rather than adult court, based upon her review of the statutory factors laid out in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2024). In her summary paragraph, Schutz stated that Corey's only previous contact with the justice system involved minor infractions typical of adolescent development, such as driving without a parent on a learner's permit and involvement in a school fight, both of which she stated resulted in successful completion of probation. She stated that there was no evidence of criminal street gang involvement, unauthorized firearm use, or a pattern of violent behavior. Schutz concluded that Corey is highly amenable to the treatment and rehabilitative services offered within the juvenile system, which are specifically designed to address the developmental and psychosocial needs of adolescents. She further noted that Corey had successfully completed an Aggression Replacement Training course. Finally, Schutz opined that Corey would be able to be successfully rehabilitated by the age of 19; however, she could not answer whether Corey should be monitored past his minority.

Kiesel investigated the homicide on January 20, 2025. He was dispatched to the local hospital where Reeb had been transported. Reeb was life-flighted to a different hospital, where he eventually died from a stab wound to his chest that pierced his heart. He also suffered stab wounds to the skull, and blunt force trauma to the neck, torso, and head. The investigation revealed that

earlier in the evening, there had been an officer pursuit involving a stolen vehicle, which vehicle eventually hit a tree and became disabled. There were two to three individuals in the stolen vehicle who fled on foot, and one of these individuals was purportedly Reeb. Further investigation showed that another vehicle became involved in the incident and that five individuals exited that car. Some of these individuals, one of whom was Corey, pursued Reeb on foot. According to Kiesel, Corey hit and punched the victim. The police reports and video surveillance footage confirm these events and that Devante Castellaw, one of the five individuals, was the person who stabbed Reeb.

The record shows that Corey was involved in a physical altercation with another middle school student in November 2022, and that Corey was the aggressor. A juvenile case was opened, and Corey was charged with assault. Corey was subsequently adjudicated on an amended juvenile petition for disorderly conduct. Information from the Scottsbluff Public Schools shows that Corey had three previous disciplinary referrals: attendance violation in 2021, disruptive behavior in 2020 (Corey attempted to fight another student and was held back by staff), and fighting in 2018 (Corey chased another student after school, tackled him and choked him). Police records show that Corey was involved in an assault at a Wal-Mart on January 14, 2025, and was present during a previous incident at a convenience store.

Frye testified that Corey was on juvenile diversion in 2023 for the school assault/disorderly conduct adjudication but did not successfully complete the diversion program due to receipt of another referral for truancy. The Juvenile Diversion Discharge Report in the record shows that Corey was unsuccessfully discharged from diversion in March 2023 for failure to comply with program conditions. The report shows that the juvenile probation officer and the school tried to work with Corey, but there was no participation on his part.

Cardwell testified generally about both preadjudication and postadjudication services available through juvenile probation. He did not specifically testify what services would be available to Corey, but he did indicate that services would terminate and Corey would be unsatisfactorily released from probation if the probation had not been completed by the time he turned 19 years old. Buhr testified generally about programs available in adult probation. She testified that dialectical behavior therapy would be available in adult probation at the age of 18 and similar therapy would be available on an individual basis before age 18. Buhr also believe that a person under the age of 18 placed on adult probation could still participate in some of the juvenile programs. Buhr indicated that an individual can be placed on probation for a felony conviction for up to 5 years.

Corey called King to testify about the Reconnect High School in the Scottsbluff School District, where Corey has been enrolled since the fall of 2024. Reconnect is a diploma program for children with various issues, including truancy and mental health issues. Corey was a "really good student," was not a discipline problem, and showed King kindness and respect. Corey has been doing schoolwork at home since the incident.

Corey called Adams to testify; however, she was advised not to release case information on the juvenile probation case because it is sealed. She did testify that Corey was respectful in his interactions with her.

Corey testified about the night in question. He admitted that he was with four other individuals (three of whom are relatives), and that they were looking for a relative's car that had been stolen. He admitted to chasing Reeb on foot and that he "laid some punches" on him. The

- 3 -

group then got back in their vehicle at which time one of the other individuals said that he "just stabbed that nigger" and showed them the handle of a knife. On cross-examination, Corey agreed that he had assaulted Reeb twice; once when he hit him three or four times, and again after the victim had apparently been stabbed, when Corey punched and kicked him. Corey admitted that he had been present when the same individual who stabbed the victim in this case assaulted another person at a Wal-Mart, but he denied knowing that a knife was involved. He also agreed that he was present with the same group during two other incidents involving threats and assault.

On December 4, 2025, the district court entered its order denying the motion to transfer to juvenile court. We set forth details of the court's order in our analysis below.

## III. ASSIGNMENTS OF ERROR

Corey assigns that the district court (1) abused its discretion in finding a sound basis for retention under Neb. Rev. Stat. § 29-1816 (Cum. Supp. 2024) and § 43-276, (2) made clearly erroneous factual findings not supported by the record, and (3) improperly weighed and applied the statutory transfer factors.

## IV. STANDARD OF REVIEW

In appeals from an order of the county or district court in a pending criminal case granting or denying a motion to transfer the case to juvenile court, the ruling is reviewed for an abuse of discretion. *State v. Damore*, 320 Neb. 914, 31 N.W.3d 604 (2026).

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

Corey assigns that the district court abused its discretion in finding that the State proved a sound basis for retention of the case in district court. He challenges several of the court's factual findings relative to the statutory factors and he argues that the district court improperly weighed and applied the factors. We will address these arguments together after setting forth the applicable legal framework and reviewing the district court's discussion of the various statutory factors and the court's conclusion.

### 1. LEGAL FRAMEWORK

Neb. Rev. Stat. § 43-246.01(3) (Cum. Supp. 2024) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, the allegations against Corey put him within the latter category of juvenile offenders, and the State filed charges against him in the district court.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to § 29-1816(3).

- 4 -

In the instant case, after Corey moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in order to retain proceedings in criminal court, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *State v. Aldana Cardenas*, 314 Neb. 544, 561, 990 N.W.2d 915, 928 (2023). It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.* In a motion to transfer to juvenile court, the burden of proving a sound basis for retaining jurisdiction in county court or district court lies with the State. *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025).

### 2. DISTRICT COURT'S FACTUAL FINDINGS

#### (a) Type of Treatment to Which Juvenile Would Most Likely Be Amenable

The district court discussed Schutz' recommendation in her report and testimony. Schutz testified that Corey is highly amenable to the treatment and rehabilitative services offered within the juvenile system. The court noted, however, that Schutz did not review any of the police reports and thus was not aware of evidence of Corey's criminal street gang involvement, his unauthorized firearm use, or his pattern of violent behavior. The court recognized that Corey had completed an "Aggression Replacement Training" course. The court also noted Caldwell's testimony about the pre- and post-adjudication services available to juveniles, however, it noted that Caldwell also

stated that it was rare to have an 18-year-old on probation. The court then noted Buhr's testimony regarding services available through adult probation.

The district court referenced that Corey had previously been offered diversion and probation in a juvenile case stemming from violence at school (Corey fighting with another male student). He was removed from diversion due to non-compliance with his agreement and then placed on probation. Corey was released satisfactorily from that probation in late 2023. The court found "no appreciable difference between the adult and juvenile services available; and the juvenile services thus far offered have not resulted in eliminating Corey's violent behaviors." The court went on to conclude, "Considering Corey's age and history of violence, the Court sees no particular advantage in juvenile court programs over adult sentencing options."

While the district court did not specifically address the type of treatment that Corey was amenable to, it found that similar treatment would be available in either juvenile or adult court.

### (b) Evidence That Alleged Offense Included Violence, Premeditation, and Aggressiveness

The district court found that the offense displayed violence, premeditation, and aggressiveness. The court noted that the assault was apparently a response to the victim's involvement in the theft of a car belonging to a relative of some of the aggressors. A somewhat vague threat of retribution had been made prior to the assault. The evidence shows a foot pursuit of the victim, and Corey punching and/or kicking him both before and after he was fatally stabbed by another individual. The court concluded that Corey's behavior was extremely aggressive and violent.

### (c) Motivation for Commission of Offense

The district court noted the apparent "payback" against the victim, finding that Corey's actions were "in no way" defensive in nature.

### (d) Age of Juvenile and Ages and Circumstances of Any Others Involved in Offense

The district court found the ages of those involved, other than Corey, ranged from 16 to 20, that most of the members of the group are related, and that Corey has been involved in other violent incidents where some of these individuals were also present.

### (e) Previous History of Juvenile, Including Any Previous Convictions of Prior Juvenile Court Adjudications

The district court found that Corey has a history of violence, dating to 2018, involving an assault on another student after school. He was adjudicated in 2022 for fighting with another student. The court noted that Corey was also involved in some "violent incidents" in 2021, including assaults or fights at two fast food restaurants and a convenience store. In these incidents, Corey was present with some of the same people as in the instant case. The court concluded that Corey has shown a pattern of violent behavior.

### (f) Sophistication and Maturity

The district court referred to some of Schutz' findings, which showed some deficits in Corey's reasoning, and that Corey was a "somewhat unassuming individual who prefers to avoid the leadership role." The court agreed, noting that in some of the violent incidents, Corey is seen "more on the sidelines," but that in his one-on-one fights, he was in the lead. The court stated that most recently, "Corey is taking on a role of full participation." Overall, the court concluded that Corey seems average for his age in sophistication and maturity.

### (g) Best Interests of Juvenile

The district court found that Corey's best interests "would be most optimally served by an aggressive program of supervision and behavioral therapy to attempt to change his propensity to engage in violence."

### (h) Continuation of Supervision Beyond Juvenile's Minority

The district court found that supervision should continue past Corey's minority. In reaching this conclusion, the court stated that the juvenile court could supervise him at most for less than 2 years, as he would turn 17 in one month (January 2026). And the court noted that adult probation would have 5 years of possible supervision of a felony. The court found that it would be unrealistic to believe that less than 2 years of therapy and supervision would be sufficient to protect the public and bring about changes in how Corey relates to the world.

### (i) Inapplicable Factors

The district court found that mediation and/or restorative justice was not applicable, diversion is not appropriate, there is no evidence of a firearms conviction or unauthorized use or possession of firearms, and no juvenile court order pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016) has issued.

### (j) Whether Juvenile Is Criminal Street Gang Member

The district court noted that Corey's "gang" appears to be essentially he and his cousins and that he is a willing participant in a group of young men which has engaged in criminal activities and violence. The district court did not specifically find that Corey is a street gang member.

### (k) Juvenile's Ability to Appreciate
### Nature and Seriousness of Conduct

The district court indicated that this factor is difficult to gauge. The court noted Schutz' opinion that Corey showed remorse and was fearful of what was to come; however, the court noted that in his testimony, Corey did not seem particularly remorseful but seemed "somewhat matter of fact, which is consistent with his history of violent behavior."

### 3. DISTRICT COURT'S CONCLUSION

Although the district court did not specifically indicate which factors above weighed in favor of transfer or retention, the court's analysis shows that it found most factors favored retention. The district court concluded that the State met its burden of showing a sound basis for retaining jurisdiction in the criminal court. The court stated:

Although Corey is relatively young, he has practiced violence as a means of dealing with conflict for several years. This incident, in which he played an active and aggressive part, was retributive in nature and produced a horrible result, which can never be remedied. He associates with others who share this philosophy of violence, and despite interventions by his school, diversion, and probation, the violence continued. It is unrealistic, and inconsistent with the safety to the public, to believe less than two years of juvenile court supervision would [e]ffect the changes necessary to steer Corey away from the path he has chosen.

### 4. COREY'S ARGUMENT ON APPEAL

In the argument section of his brief, Corey challenges the district court's findings regarding Corey's street gang membership, his amenability to treatment, his pattern of violent behavior, and the need for supervision beyond his minority. Corey also argues that the court weighed the seriousness of the present offense above all other factors.

We find no abuse of discretion in the district court's analysis of the statutory factors argued by Corey. The record supports that Corey has exhibited violent tendencies in the past, and that despite having prior diversion and probation services through juvenile court he continued to show violent behavior in the present offense. Treatment through juvenile court would only be available for a relatively short period of time and treatment options are available in adult court. Although the district court did not specifically find that Corey was a member of a particular street gang, the record supports that he continues to be involved in criminal conduct with the same group of individuals.

We note that Schutz opined that Corey would benefit from services through the juvenile court and that the State's evidence did not necessarily contradict Schutz' opinion. However, even when an expert opines favorably on amenability through the juvenile court and the State presents no direct evidence to the contrary, this is not determinative. Nebraska Supreme Court precedent dictates that a trial court does not necessarily abuse its discretion in determining insufficient time in the juvenile court exists to address the juvenile's needs. See, e.g., *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025) (affirming denial of transfer to juvenile court despite absence of State's direct evidence regarding amenability based in part upon nature and depravity of offense). See, also, *In re Interest of Aaden S.*, 320 Neb. 785, 30 N.W.3d. 668 (2026) (upholding decision to transfer juvenile action to district court when amenability to treatment weighed in favor of retention in juvenile court but violence, motivation, age, and public safety supported transfer).

There is no arithmetical computation or formula required in a court's consideration of the statutory criteria or factors. *State v. Esai P.*, 28 Neb. App. 226, 942 N.W.2d 416 (2020). There are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. See *State v. Jeremiah T., supra*. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.* We find no abuse of discretion in the district court's analysis of weighing of the statutory factors.

As the Supreme Court has recently emphasized, abuse of discretion is a highly deferential standard of review. *Id*. In reviewing a trial court's ruling on a transfer motion, an appellate court's

function is not to review the record de novo to determine whether we think the case should be transferred. *Id.* An appellate court's review is limited to determining whether the trial court's reasons and rulings are clearly untenable. *Id.* To be "untenable" is to be "incapable of being defended." *Id.* In this case, the district court provided a sound basis for retaining jurisdiction. Accordingly, we find no abuse of discretion in the district court's order denying the motion to transfer.

## VI. CONCLUSION

The district court did not abuse its discretion in denying Corey's motion to transfer his case to juvenile court.

AFFIRMED.